*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* OSTRANDER, Minors.

UNPUBLISHED
August 17, 2023

Nos. 364859; 365167
Jackson Circuit Court
Family Division
LC No. 17-002288-NA

Before: GADOLA, P.J., and M. J. KELLY and SWARTZLE, JJ.

PER CURIAM.

In these consolidated appeals,[1] respondent parents appeal by right the trial court order terminating their parental rights to their four minor children, OO, JO, MO, and SO, under MCL 712A.19b(3)(c)(*i*) (conditions leading to adjudication continue to exist), and MCL712A.19b(3)(j) (reasonable likelihood of harm if child is returned). Finding no error, we affirm the trial court's termination order.

## I. RELEVANT FACTS AND PROCEEDINGS

Children's Protective Services (CPS) received a report from a school social worker that OO went to school with dirt on her body, old feces in her diaper, and dried feces on her hands and thighs. Three days later, while the investigation of the report was ongoing, SO's pediatrician sent her to the emergency room because of poor weight gain and severe malnutrition. SO was not eating and had lost over 40% of her body weight since her birth two months earlier.

A CPS investigator spoke with respondent-mother at the hospital and learned that SO had been vomiting and unable to keep food down for two weeks; respondents had tried different formulas, watered-down milk, and watered-down Gatorade, without success. Respondent-mother said that she had not sought medical attention for SO because she thought that they could fix the

---

[1] Respondent-mother appeals in Docket No. 364859, and respondent-father appeals in Docket No. 365167. This Court consolidated the appeals to advance administrative efficiency. *In re Ostrander Minors*, unpublished order of the Court of Appeals, entered March 7, 2022 (Docket Nos. 364859 and 365167).

problem and, given the parents' history with CPS, she was worried that her children would be taken away again. The CPS investigator reported that respondent-mother finally decided to seek medical help because SO's eyes were not staying open as long as before. Dr. Stephen Gorga reported that SO's physical condition had taken more than two weeks to develop and her condition was life-threatening. SO was diagnosed with severe malnutrition, electrolyte derangements, pyloric stenosis, nutritional wasting in infancy, hyponatremia of newborn, metabolic alkalosis, malnutrition, child neglect–nutrition, critically ill, at risk for heart failure, and at risk for serious bacterial infection due to state of malnutrition.

On January 26, 2022, petitioner, the Department of Health and Human Services (DHHS), filed the petition seeking removal of all four children and the termination of respondents' parental rights. The petition alleged that the children were at imminent risk of harm if left in respondents' care because of the life-threatening medical neglect of SO. The petition further expressed concerns about the physical neglect of OO, and alleged that respondents were taking unprescribed pills. The court entered an ex parte order taking the children into protective custody. At the preliminary hearing on February 1, 2022, the trial court authorized the petition, placed the children in foster care, and granted respondents supervised parenting time.

At a combined motion/initial disposition hearing held on April 26, 2022, the children's lawyer-guardian ad litem (LGAL) moved to amend the petition to temporary jurisdiction on grounds that SO's malnutrition stemmed from a serious medical condition that prevented her from keeping food down, not necessarily from neglect. The LGAL believed that the allegations in the petition did not rise to the level of immediate termination and that respondents were "serviceable." Petitioner argued in opposition to the motion that although one of the doctors in the case agreed that there was a medical issue, he also believed that there were clear signs of neglect in waiting so long before seeking medical care for SO. This prolonged medical neglect caused injury to SO's health. The trial court granted the LGAL's motion, reasoning that it was inappropriate to terminate respondents' parental rights on the facts before the court without giving them the opportunity to engage in and benefit from services.

The hearing next moved into the adjudication phase, and each respondent pleaded no contest to the allegations in the petition. Proceeding to the dispositional phase of the hearing, respondents' caseworker, Seana Watson, recommended that respondents: (1) participate in substance-abuse assessments and follow the recommendations, (2) participate in random drug screens, (3) engage in parenting classes, (4) participate in psychological evaluations and follow up with any recommendations, (5) obtain, maintain, and verify appropriate housing, and (6) show and verify an income adequate to the needs of their family. The trial court issued an order adopting petitioner's recommendations, allowing respondents supervised parenting time, and setting a dispositional review/permanency planning hearing for July 19.

Respondents did not attend the July 19 dispositional review hearing and had not made any significant progress on their court-ordered services. They were living in a tent and had not attended parenting time for the previous three weeks. The trial court expressed concern about respondents' lack of progress, inconsistency, and living arrangements. The court deemed it too early to consider a goal change, but it wanted it made clear to respondents that if the court saw a similar report in three months, it would move quickly to termination. The trial court continued its previous recommendations and set the next dispositional review hearing for October 11, 2022.

At the October 11, 2022 hearing petitioner requested a goal change from reunification to adoption. Respondents did not attend the hearing. Watson stated that, in addition to not having adequate housing, respondents attended only 3 of 23 parenting-time opportunities during the reporting period, had recently tested positive for methamphetamine, and had not engaged in any court-ordered services except for their psychological evaluations. Respondents' attorneys requested the court maintain the status quo for another reporting period because the case was still relatively new. The trial court denied that request because "a delay here is only going to work to harm the children…." The trial court issued an order changing the goal to adoption, authorizing petitioner to initiate termination proceedings, suspending parenting time, and stating that reunification efforts "may cease." Subsequently, petitioner filed a supplemental petition seeking the termination of respondents' parental rights under MCL 712A.19b(3)(c)(*i*), (3)(c)(*ii*), and (3)(j).

At the December 6, 2022 termination hearing, Watson, the caseworker, was the only witness. She testified as to respondents' lack of engagement with services. Respondents were referred for a substance-abuse assessment, but neither attended. Respondent-mother participated in 11 of 48 drug screens, testing positive for THC on every screen and testing positive for methamphetamine twice. Respondent-father also only participated in 11 of 48 drug screens, testing positive for THC every time and positive for methamphetamine once. Watson testified that she offered to administer drug screens at their residence upon request due to their lack of transportation. After not participating in their scheduled intake for parenting classes in July, respondents finished their intake in October, but they did not participate in the classes. After two missed appointments for respondent-mother, she finally completed a psychological evaluation in September. And after three missed appointments for respondent-father, he finally completed a psychological evaluation in October, but neither parent followed up with recommendations. Two weeks before the termination hearing, Watson received a text indicating that respondents were still trying to obtain housing. Watson testified that respondents only attended 10 of 50 parenting-time opportunities for the duration of the case. Watson believed that it was in the children's best interests to terminate respondents' parental rights because respondents had not consistently complied with services and she did not believe that there was a reasonable likelihood of a safe reunification within a reasonable time. This lack of consistency also raised concerns for respondents' ability to care for SO's extensive medical needs.

The trial court found that clear and convincing evidence established the statutory grounds for termination under MCL 712A.19b(3)(c)(*i*) and (3)(j). The court said that even if it allowed an additional reporting period and the respondents did everything that was asked of them, the court still could not have any confidence that they had resolved their problems. The court had not seen anything suggesting that respondents had the ability to engage in the type of sustained conduct necessary to resolve the barriers to reunification in a reasonable time. As to the children's best interests, the trial court acknowledged that "some bond" existed between the children and respondents, but the bond was not sufficient for the trial court to find that termination was not in their best interests. The trial court entered an order terminating respondents' parental rights to all four children.

## II. REASONABLE EFFORTS

In Docket No. 364859, respondent-mother argues that the trial court erred by finding that petitioner DHHS made reasonable efforts at reunification when petitioner's efforts were not

responsive to her lack of transportation and were short in duration. Respondent-mother did not argue in the trial court that transportation impeded her ability to participate in services. Therefore, this issue is not preserved, and our review is for plain error affecting respondent-mother's substantial rights. *In re Ferranti*, 504 Mich 1, 29; 934 NW2d 610 (2019); see also *In re Pederson*, 331 Mich App 445, 463; 951 NW2d 704 (2020). To warrant relief, the error must have "seriously affected the fairness, integrity or public reputation of judicial proceedings." *Ferranti*, 504 Mich at 29 (quotation marks, citation, and alterations omitted).

Absent certain exceptional circumstances, petitioner "has an affirmative duty to make reasonable efforts to reunify a family before seeking termination of parental rights." *In re Hicks/Brown*, 500 Mich 79, 85; 893 NW2d 637 (2017), citing MCL 712A.18f(3)(b) and (c), and MCL 712A.19a(2). To that end, petitioner "must create a service plan outlining the steps that both it and the parent will take to rectify the issues that led to court involvement and to achieve reunification." *Id.* at 85-86. When challenging the type of services offered, a respondent must establish that he or she would have fared better if other services had been offered. See *In re Sanborn*, 337 Mich App 252, 264; 976 NW2d 44 (2021).

At the initial disposition, respondent-mother, through her attorney, expressed satisfaction with the services offered and represented that transportation was not an issue because she had a car. At neither of the two subsequent hearings did respondent-mother's attorney indicate that respondent-mother could not participate in services or parenting time because she lacked transportation. The record shows that when respondents told petitioner that they needed gas for their car, petitioner gave them a gas card. Accordingly, respondent-mother has not shown what additional transportation assistance petitioner should have provided or that she would have fared better if other services had been offered.

Similarly, in Docket No. 365167, respondent-father attributes his inability to comply with services to his lack of housing. However, nowhere in the record do respondents identify housing issues as a significant impediment to participating in services. Respondent-father asserts that petitioner did not offer any housing resources, but Watson's testimony at the July review hearing indicates that she provided respondents with information on applying for housing assistance.

Respondent-mother also argues that petitioner's efforts at reunification were not reasonable because they were of short duration and that the trial court erred by allowing petitioner to file a supplemental petition seeking termination. We review the trial court's finding for clear error. *Id*. at 258. Clear error exists when, upon review of the entire record, the reviewing court is left with the definite and firm conviction that the lower court made a mistake. *In re Baham*, 331 Mich App 737, 751; 954 NW2d 529 (2020).

A "supplemental petition for termination of parental rights may be filed at any time after the initial dispositional review hearing, progress, review, or permanency planning hearing, whichever occurs first." MCR 3.977(H)(1)(a). The trial court and the attorneys for both parties recognized that the dispositional phase of the proceedings was shorter in this case than is typical. However, at the first dispositional review hearing the trial court expressed concerns about respondents' lack of progress and inconsistency and emphasized that if respondents did not make progress during the next review period, then it would move quickly to termination. Respondents did not make progress. During the next review period, the parents attended only 3 of the

parenting times offered during the reporting period. "While [DHHS] has a responsibility to expend reasonable efforts to provide services to secure reunification, there exists a commensurate responsibility on the part of respondents to participate in the services that are offered." *In re Frey*, 297 Mich App 242, 248; 824 NW2d 569 (2012).

Given respondent-mother's very minimal participation in services, and considering that petitioner may file a supplemental petition for termination of parental rights at any time after the initial dispositional review hearing, MCR 3.977(H)(1)(a), respondent-mother has not shown that the trial court clearly erred in authorizing petitioner's request to file a supplemental petition for termination. See *Baham*, 331 Mich App at 751.

## III. RELATIVE PLACEMENT

Respondent-mother next argues that the trial court erred by failing to order petitioner to assist in making the paternal grandmother's home suitable for the children. We disagree.

To the extent the placement decision involved matters committed to the trial court's discretion, this Court's review is for an abuse of discretion. See *In re Bell*, 341 Mich App 596. 601-602; __ NW2d __ (2022). There exists a statutory preference for placing a child with relatives during the initial stage of a child protective proceeding, i.e., "immediately after removal of the child from his or her parents' care and during the statutory review period established in MCL 722.954a(3)." *In re COH, ERH, JRG, & KBH Minors*, 495 Mich 184, 198; 848 NW2d 107 (2014). See also MCL 722.954a(2). The placement decision "must be made in the child's best interests." MCL 722.954a(5). Respondent-mother cites no authority that requires a trial court to order petitioner to help a relative remove the barriers to placement, particularly under circumstances such as those present here. Although petitioner was obligated by statute, and strongly urged by the trial court, to give preference to a relative placement, petitioner was not statutorily required to place the children with their paternal grandmother if the placement did not "meet all relevant state child protection standards," MCL 722.954a(2), and was not in the children's best interests, MCL 722.954a(5). Petitioner's concerns about a lack of smoke detectors, sleeping arrangements, a blocked egress window, and improperly stored chemicals and medications in the paternal grandmother's home were reasonable considerations in petitioner's determination not to place the children there.

Respondent-mother does not dispute that petitioner was working with the grandmother to identify and resolve the barriers to placement or that petitioner was willing to do another home study at the grandmother's request. There is no record evidence that the grandmother requested another home study, nor has respondent-mother presented any evidence indicating that the grandmother needed petitioner's help to resolve issues that respondent-mother describes as "rather easy ones to correct." In light of these facts, we cannot say that the trial court erred in interpreting and applying the statutory preference for relative placement or abused its discretion by not ordering petitioner to help the grandmother address the barriers to placement.

## IV. STATUTORY GROUNDS

Both respondents argue that the trial court erred by finding that clear and convincing evidence established statutory grounds for the termination of their parental rights under MCL 712A.19b(3)(c)(*i*) and (j). We disagree.

"In order to terminate parental rights, the trial court must find by clear and convincing evidence that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been met." *In re VanDalen*, 293 Mich App 120, 139; 809 NW2d 412 (2011). An appellate court "review[s] for clear error . . . the court's decision that a ground for termination has been proven by clear and convincing evidence . . . ." *In re Trejo*, 462 Mich 341, 356-357; 612 NW2d 407 (2000). See also MCR 3.977(K). To be clearly erroneous, a decision must be "more than just maybe or probably wrong." *Id*. at 356. "Further, regard is to be given to the special opportunity of the trial court to judge the credibility of the witnesses who appeared before it." *In re Ellis*, 294 Mich App 30, 33; 817 NW2d 111 (2011). "If the trial court did not clearly err by finding one statutory ground existed, then that one ground is sufficient to affirm the termination of the respondent's parental rights." *Sanborn*, 337 Mich App at 273.

Regarding MCL 712A.19b(3)(c), there is no dispute that more than 182 days elapsed between issuance of the initial disposition order and the termination of respondents' parental rights. Each respondent pleaded no contest to the petition's allegations of severe medical and physical neglect, substance abuse, and inadequate housing. Clear and convincing evidence supported the trial court's finding that respondents' lack of housing, history of substance abuse, and history of neglecting the children's health remained barriers to reunification.

Clear and convincing evidence also supported the trial court's decision to terminate respondents' parental rights under MCL 712A.19b(3)(j). The trial court found that there was a reasonable likelihood that the children would be harmed if returned to the parents based on their history of neglecting the children's medical needs. Further, there was no evidence that either respondent completed a substance-abuse assessment; respondents completed psychological evaluations several months after they were initially ordered, but not in time to begin addressing recommendations before the permanency planning hearing; and they did not complete intakes for parenting classes until October, even though they were ordered to do so in April and had scheduled intakes and classes for July. "[A] parent's failure to comply with the terms and conditions of his or her service plan is evidence that the child[ren] will be harmed if returned to the parent's home." *In re White*, 303 Mich App 701, 711; 846 NW2d 61 (2014); see also *In re Kaczkowski*, 325 Mich App 69, 77; 924 NW2d 1 (2018); *In re Smith*, 324 Mich App 28, 49; 919 NW2d 427 (2018).

Neither respondent seriously disputes that the conditions that led to adjudication continued to exist at the time of the termination trial. Respondent-mother argues that the trial court erred by terminating her parental rights on Watson's testimony alone. This argument is without merit. Watson's testimony was sufficient to establish that respondents failed to comply with, and benefit from, the court-ordered services.

Respondents also contend that the trial court erred by concluding that the conditions could not be resolved in a reasonable time. They assert that they should have been given more time because they previously demonstrated that they could comply with and benefit from services and

achieve reunification with their children. Although it is true that respondents successfully completed their case service plans and were reunited with their two oldest children in 2017, comparing the earlier removal to the current removal would not necessarily have weighed in favor of giving respondents more time. The services ordered in the earlier proceeding were similar to those ordered in the current proceeding, respondents engaged in services immediately and fully, and 10 months after the children's removal from respondents' care, there was talk of closing the case because respondents were doing so well. Although respondents assume that their success in the earlier proceeding should have resulted in more time being given them in the current proceeding, it seems equally likely that the success of their engagement in services in the earlier proceeding could have permitted a negative inference to be drawn from their lack of engagement in services in the current proceeding.

Respondent-father argues that termination under MCL 712A.19b(3)(c)(*i*) was premature because even if the conditions that led to adjudication continued to exist at the time of the termination hearing, the fact that he had housing and employment at the time of the hearing, had completed his psychological evaluation, and had signed up for parenting classes demonstrated that the conditions that brought the children into care could be resolved within a reasonable time. Contrary to respondent-father's argument, the record shows that he had not verified his employment or housing with the caseworker at the time of the termination hearing. Therefore, the trial court did not clearly err in moving forward with termination when respondent-father waited until the case was eight months old to begin rectifying the conditions that brought the children into care.

Next, respondent-father argues that termination was improper because, when the trial court authorized petitioner to cease reasonable efforts following the October 11 permanency planning hearing, the trial court violated his due-process rights by creating the grounds for the termination of his parental rights. Because respondent-father did not object to the cessation of services on due-process grounds, this issue is not preserved, and our review is for plain error affecting respondent-father's substantial rights. *Ferranti*, 504 Mich at 29.

Respondent-father relies on *In re B and J*, 279 Mich App 12, 15; 756 NW2d 234 (2008), a case in which the petitioner reported undocumented parents to the Immigration and Customs Enforcement agency, leading to the parents' deportation. *Id*. Petitioner then successfully sought termination of the parents' parental rights on grounds that the parents had been deported and could not provide proper care and custody for their children. *Id*. at 16. This Court held that "[p]etitioner was not entitled to seek termination of respondents' parental rights under [MCL 712A.19b(3)(g)] in this case because petitioner itself intentionally set out to create that very ground for termination." *Id*. at 19.

In this case, respondent-father created the grounds for termination, not petitioner. Respondent-father's choice of waiting to obtain medical care led to SO's life-threatening malnutrition. Respondent-father had several months during which he could have begun to comply with court-ordered services, but he chose to wait until the case had been open for eight months to begin doing so. The trial court did not set up respondent-father for failure; it was respondent-father's own inexplicable delay that resulted in his inability to make demonstrable progress toward reunification. Therefore, respondent-father's due process rights were not violated.

Next, respondent-father argues that termination was improper because he was prejudiced by the trial court's last-minute appointment of new counsel without his consultation. Because this issue is not preserved respondent-father must show plain error that "seriously affected the fairness, integrity or public reputation of judicial proceedings . . . ." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999) (quotation marks, citation, and alteration omitted). At trial, respondent-father's newly-appointed counsel advocated vigorously for an additional review period to allow respondent-father to demonstrate his compliance with, and benefit from, services. She represented to the trial court that respondent-father was drug-free, employed, and adequately housed, and that he was scheduled to begin parenting classes. She intimated that respondent-father could not comply with the court's order and prove that he was drug-free because petitioner had stopped doing drug screens. She said that respondent-father was motivated and wanted to get his children back, and she agreed with respondent-mother's attorney that the dispositional phase had been too short. Given the vigorous representation respondent-father's newly-appointed counsel gave him at the termination phase of these proceedings, respondent-father cannot show that allowing the substitution of counsel "seriously affected the fairness, integrity or public reputation of judicial proceedings . . . ." *Id*. (quotation marks, citation, and alteration omitted).

Also unavailing is respondent-father's contention that the trial court erred by terminating his parental rights under § 19b(3)(j) because: (1) the trial court did not identify the risk of harm to which the children would be susceptible, (2) respondent-father had made substantial headway on his court-ordered services before the trial court prematurely stopped them, (3) it was pure conjecture to assume that the children would be harmed if returned to the parents, and (4) the trial court did not identify a statutory basis for termination in its ruling. The record does not support respondent-father's claim that the trial court did not identify the harm that the children risked if returned to respondent-father's care. The trial court indicated that respondents' failure to address their substance-abuse issues put the children at risk due to their homelessness, unemployment, and previous neglect of the children stemming from the respondents' substance abuse. Respondents' failure to address their parenting issues put the children at risk of the persistent neglect that nearly cost the youngest child her life.

As already discussed, respondent-father's claim to have made substantial progress toward completing the court-ordered services is without merit. The record also does not support respondent-father's assertion that the trial court did not identify a statutory basis for termination. Although the trial court did not identify the statutes by their compilation number, the court clearly indicated under which statutes it found grounds for termination existed by reciting the substance of the applicable statutory provisions.

In light of the foregoing, we conclude that the trial court did not clearly err in finding that grounds for termination existed by clear and convincing evidence.

## V. BEST INTERESTS

Respondent-father contends that the trial court lacked sufficient evidence to find that termination was in the best interests of the children. We disagree.

As with a trial court's decision that a statutory ground for termination has been proven, an appellate court "review[s] for clear error . . . the court's decision regarding the child's best

interest." *Trejo Minors*, 462 Mich at 356-357. If the trial court finds "that there are grounds for termination of parental rights and that termination of parental rights is in the child's best interests, the court shall order termination of parental rights and order that additional efforts for reunification of the child with the parent not be made." MCL 712A.19b(5). The trial court must find by a preponderance of the evidence that termination of parental rights is in a child's best interests. *In re Moss*, 301 Mich App 76, 83; 836 NW2d 182 (2013). In making its best-interest determination, a trial court may consider the child's bond to the parent, the parent's parenting ability, the child's need for permanency, and the advantages of a foster home over the parent's home. *In re Gonzales/Martinez*, 310 Mich App 426, 434; 871 NW2d 868 (2015). The court may also consider visitation history, the parent's compliance with treatment plans, the child's well-being in care, and the possibility of adoption. *Sanborn*, 337 Mich App at 277.

The trial court's best-interest findings were supported by record evidence and not clearly erroneous. Watson testified about the children's bond with the foster parents, the advantages of the foster home, the foster parents' willingness to continue to provide stability and permanence through adoption, and respondents' lack of visitation and compliance with court-ordered services. Updated court reports indicated that the children were doing well in foster care and that the foster parents were very attentive to the children's needs.

Contrary to respondent-father's assertion that the record does not indicate the basis for the trial court's best-interest determination, the record indicates that the trial court based its determination on the foster parents' proven ability to care for the children's needs, particularly their medical needs, and their willingness to provide the children with permanency, stability, and finality. The trial court acknowledged that the dispositional stage of the proceeding had been shorter than was often the case. However, the trial court lacked confidence that respondents would be able to provide the children with certainty and permanence even if given more time.

Also unpersuasive is respondent-father's contention that the trial court gave too little weight to the bond that existed between him and the children, his good parenting ability, his attendance at parenting time when possible, and the fact that he had begun to comply with court-ordered services. Watson did not testify about respondent-father's parenting ability at the termination hearing, nor did the trial court indicate that parenting ability—other than as it pertained to respondents' failure to respond to their children's health issues—factored into its best-interest determination. Parenting ability was one of the factors that the trial court could consider but was not necessarily required to consider. See *Gonzales/Martinez*, 310 Mich App at 434. Furthermore, respondent-father's abysmal parenting-time attendance rate did not weigh in his favor. The trial court recognized that the children had a bond with respondents, but correctly concluded that bond alone was not sufficient to overcome its best-interests findings.

Respondent-father's contention that the trial court erred by not determining the best interests of each child individually should also fail. This Court held in *In re Olive/Metts*, 297 Mich App 35, 41-42; 823 NW2d 144 (2012), that a trial court must decide the best interests of each child individually. In *White*, 303 Mich App at 715, this Court clarified that a trial court need only consider the differences in the best interests of the children if they *significantly differ*. In other words, *Olive/Metts* "does not stand for the proposition that the trial court errs if it fails to explicitly make individual and—in many cases—redundant factual findings concerning each child's best interests." *Id*. at 716. Respondent-father contends that the differences in the children's ages

required individual determinations of each child's best interests. However, under *Olive/Metts* and *White*, the best interests of the children do not *significantly differ* merely because they are of varying ages. Therefore, the trial court did not err by not determining the best interests of the children individually.

The trial court did not clearly err by concluding that a preponderance of the evidence supported that termination of parental rights was in the children's best interests.

Affirmed.

/s/ Michael F. Gadola
/s/ Michael J. Kelly
/s/ Brock A. Swartzle